# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

KIMBERLY SPEARS, et al.,             :

       Plaintiffs,             :

                          Case No. 3:08cv00331

                   :

 vs.             :     District Judge Walter Herbert Rice

                   :     Magistrate Judge Sharon L. Ovington

CHRYSLER LLC, et al.,             :

       Defendants.             :

                   :

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.    INTRODUCTION

Plaintiffs are residents and property owners in Dayton, Ohio.  They live near an industrial facility (the Facility) owned, operated, or formerly operated by Defendants Chrysler, LLC; Behr Dayton Thermal Products, LLC; Behr Dayton Thermal Plant, LLC; and Behr America, Inc.  Plaintiffs allege, in part, that Defendants operated the Facility for many years in a manner that contaminated Plaintiffs' persons, properties, and homes with toxic, carcinogenic, and otherwise ultra-hazardous chemicals, such as trichloroethylene (TCE).  (Doc. #3 at ¶1).  Plaintiffs' harm allegedly includes "mental anguish and anxiety, fear of contracting cancer and other illness, damage to their properties and personal finance, loss of use and enjoyment of their residences and destruction of their community."  *Id*.

Plaintiffs brings this case under Ohio law seeking certification of a class of

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiffs and further seeking, among other things, awards of monetary damages and injunctive relief. The case is presently before the Court upon Defendants' Motion to Dismiss or in the Alternative to Stay (Doc. #28), Plaintiffs' Memorandum in Opposition (Doc. # 30), Defendants' Reply (Doc. #s 31), and the record as a whole.

## II.    MOTIONS TO DISMISS

Defendants contend that Plaintiffs' Class Action Amended Complaint must be dismissed or stayed under the doctrine of primary jurisdiction and that certain Counts of the Amended Complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

When ruling on a Rule 12(b)(6) Motion to Dismiss, the Court construes the Complaint in the plaintiff's favor, accepts the allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009); *see Evans-Marshall v. Bd. of Education of Tipp City*, 428 F.3d 223, 228 (6th Cir. 2005).

"[I]n order to survive a Rule 12(b)(6) motion, the nonmoving party must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Bell Atlantic v. Twombly*, 550 F.3d 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)). A Complaint containing facts creating only "a *suspicion* of a legally cognizable right of action is insufficient." *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008)(citing *Twombly*, 127 S.Ct. at 1965).

The measure of a Rule 12(b)(6) challenge – whether the Complaint raises a right to relief above the speculative level – "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008)(quoting in part *Twombly*, 127 S.Ct. at 1965). Consequently, examination of a Complaint for a plausible claim for relief is undertaken in conjunction with "the well-established principle

that 'Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (quoting *Twombly*, 127 S.Ct. At 1964)).

## III.    PLAINTIFFS' AMENDED COMPLAINT[2]

Although lengthy, Plaintiffs' Amended Complaint is readily understood. Plaintiffs allege that TCE and other volatile organic compounds were regularly used during manufacturing processes at the Facility. According to Plaintiffs, Defendant Chrysler has known about the off-site soil and groundwater contamination since at least as early as 2001. Plaintiffs state, "At that time it was also known, of should have been known, that groundwater contamination was migrating in a southern direction in the direct path of hundreds of residential properties." (Doc. #3 at ¶25).

Plaintiffs explain that both the United Stated Environmental Protection Agency (EPA) and the Ohio Environmental Protection Agency have identified the Facility as the source of a large plume of groundwater contaminated with TCE and other hazardous substances. This plume of groundwater contamination not only extends into neighborhoods adjacent to or near the Facility, it "will eventually discharge into the Great Miami River, which is a sensitive water body in the heart of Dayton, Ohio," according to Plaintiffs. (Doc. #3 at ¶28). Plaintiffs maintain that in addition to TCE, the plume is contaminated with Dichloroethene, Tetrachloroethene (PERC), and vinyl chloride, each of which can cause serious health and disease impacts. Exposure to TCE, for instance,

---

[2] Beginning with subject matter jurisdiction, the Counts set forth in the Amended Complaint do not raise any federal claims and instead raise only state common-law claims. *See* Doc. #3, pp. 16-35. Yet subject matter jurisdiction appears to exist under a provision of the Class Action Fairness Act of 2005, *see* 28 U.S.C. §1332(d)(2), a conclusion the parties do not presently address or dispute. *See* Doc. #32 at ¶6; *see, e.g. Savedoff v. Access Group, Inc.*, 524 F.3d 754, 760 n.5 (6th Cir. 2008).

3

can cause "unconsciousness, liver cancer, brain cancer, lung cancer, cancers of the blood and death," *id.* at ¶31; exposure to PERC can cause "headaches, dizziness, nausea, confusion, difficulty speaking and walking, unconsciousness, impaired fetal development in pregnant women, kidney damage, liver damage, cancer, and death," *id.* at ¶32.

Plaintiffs allege, "Defendants have knowingly and intentionally chosen not to remove toxic chemicals from the environment although Defendants are aware that the toxic chemicals continue to invade plaintiffs' property and plaintiffs continue to be exposed.... The contamination caused by defendants' actions and operations has diminished the value of plaintiffs' properties and has impaired plaintiffs' ability to sell said properties." (Doc. #3 at ¶s 34-35).

Plaintiffs further maintain that their properties have "been used by defendants for years as a de facto storage facility for hazardous waste. In exchange, those defendants have paid the relatively minimal cost of a public relations campaign and various illegitimate 'studies' while the public continued to bear the true cost of defendants' intentional and reckless acts." (Doc. #3 at ¶3). According to Plaintiffs, "As late as September 2008, defendants continue their campaign of misinformation by way of misrepresentation and incomplete answers and explanations designed to diminish the true nature and extent of the contamination cause[d] by their acts." *Id.* at ¶39.

Plaintiffs have attached a map as Exhibit 1 to their Amended Complaint describing the boundaries of the proposed class of Plaintiffs. *See* Doc. #3 at ¶41 and Exh. 1.

The Amended Complaint asserts thirteen Counts: Trespass, Private Nuisance, Unjust Enrichment, Strict Liability, Negligence, Negligence Per Se, Medical Monitoring, Battery, Intentional Fraudulent Concealment, Constructive Fraud (Negligent Fraudulent Concealment), Negligent Misrepresentation, Civil Conspiracy, and Punitive/Exemplary Damages.

Plaintiffs' Prayer for Relief seeks in part:

A.      Enter an Order ... permitting this action to be maintained as a class action, appoint Plaintiffs as the representatives of the class, and Plaintiffs' counsel

as counsel for the classes;

B.      Create a fund, paid for by Defendants, under Court supervision, to finance medical monitoring services, including, but not limited to, testing, examination, preventative diagnostic screening for conditions that can result from ... exposure to TCE and other hazardous materials;

C.      Enter an Order requiring the Defendants to bear the cost of publication to Plaintiffs and members of the classes of approved guidelines and procedures for medical screening and monitoring of Plaintiffs and members of the classes, the content, form and manner of such publication to be approved by the Court;

D.      Enter Judgment in favor of Plaintiffs and members of the classes against Defendants for costs incurred in medical monitoring, loss of property value and for all other relief, in an amount to be proven at trial, as to which they may be entitled....

(Doc. #3 at 36).

## IV.   DISCUSSION

### A.   <u>A Preliminary Matter</u>

Defendants rely on various documents appearing to be public records that are available from the EPA. *See* Doc. #28 (Exhibits at Tabs 1 and 2). Plaintiffs have submitted numerous documents also appearing to be public records. *See* Doc. #30, Exhs. 1-11. Consideration of such documents – *i.e.*, documents outside the Complaint – normally requires treating a Rule 12(b)(6) Motion as a Motion for Summary Judgment under Fed. R. Civ. P. 56(c) with notice to Plaintiffs and a reasonable opportunity to submit additional materials. *See* Fed. R. Civ. P. 12(d); *see, e.g., Vakilian v. Shaw*, 335 F.3d 509, 515 (6th Cir. 2003). Yet Defendants contend that considering the pleadings under Rule 12(b)(6) is warranted because the Court may take notice of the EPA's ongoing investigation and remediation process since the existence of those activities are matters of public record. (Doc. #28 at 4-5, n.3). Defendants are correct, *see Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). And Plaintiffs do not contend otherwise.

Consequently, for purposes of this Report, the Court takes notice of the following:

> (1) the EPA has identified begun an investigation regarding the facility owned or formerly owned by Defendants (as well as other facilities in the area); (2) in December 2006 Defendant Chrysler and the EPA entered into an Administrative Order by Consent (AOC) to conduct vapor intrusion investigation and to undertake appropriate mitigation of the Behr site and surrounding area; (3) under this AOC, and with EPA funds, Defendant Chrysler and the EPA are investigating the extent of vapor intrusion and are taking actions to remediate and mitigate vapors through the installment of vapor abatement systems and a soil vapor extraction system approved by the EPA; and (4) the EPA has sought to list the area subject to this process on the National Priorities List for further investigation and remedial action.

*See* Doc. #28 at 4-5.

### B.     The Doctrine of Primary Jurisdiction

Defendants contend that Plaintiffs' claims should be dismissed or stayed under the doctrine of primary jurisdiction in deference to the EPA's investigation and remediation efforts. Defendants reason that the issues in the present case are within the specific competency and expertise of the EPA and that several additional factors favor deference to the EPA.

Plaintiffs contend that the doctrine of primary jurisdiction has no application in this tort case insofar as they seek primarily monetary damages. Plaintiffs reason in part that their claims fall within the conventional experiences of judges, not the EPA, and there is no risk of inconsistent rulings between this Court and the EPA.

The doctrine of primary jurisdiction is prudential in nature and does not implicate the existence of the federal courts' subject matter jurisdiction over a particular case. *Collins v. Olin Corp.*, 418 F.Supp.2d 34, 42 (D.Conn. 2006). Through the doctrine of primary jurisdiction, "federal courts ... abstain from hearing certain administrative-related matters until the appropriate agency has had the opportunity to interpret unanswered technical and factual issues." *Fieger v. U.S. Atty. Gen.*, 542 F.3d 1111, 1121 (6th Cir. 2008). The doctrine "'arises when a claim is properly cognizable in court but contains

some issue within the special competence of an administrative agency.' When the doctrine applies, court proceedings are stayed so that the agency may bring its special competence to bear on the issue." *United States v. Any and All Radio Station Transmission Equipment*, 204 F.3d 658, 664 (6th Cir. 2000) (*United States v. Haun*, 124 F.3d 745, 749 (6th Cir. 1997) (other citation omitted). "The aim of the doctrine, then, is to ensure that the courts and agencies with concurrent jurisdiction over a matter do not work at cross-purposes." *Collins*, 418 F.Supp.2d at 42-43 (quoting *Fulton Cogeneration Assocs. v. Niagra Mohawk Power Corp.*, 84 F.3d 91, 97 (2nd Cir. 1996)).

"No fixed formula exists for applying the doctrine of primary jurisdiction. In every case, the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v. Western Pac. R.R.*, 352 U.S. 59, 64 (1956); *see Haun*, 124 F.3d at 750. "The principal reasons for the doctrine of primary jurisdiction are to obtain the benefit of the expertise and experience of the administrative agencies and the desirable uniformity which occurs when a specialized agency decides certain administrative questions. A court must apply the doctrine of primary jurisdiction on a case-by-case basis, deferring to an administrative agency only when the reasons for the existence of the doctrine are present." *Alltel Tennessee, Inc. v. Tennessee Public Service Com'n*, 913 F.2d 305, 309 (6th Cir. 1990)(citations omitted). The deferral "decision usually depends on whether a reference will advance the sound disposition of the court case and whether the failure to refer will impair the statutory scheme or undermine the agency to which the reference might be made." *U.S. Public Interest Research Group v. Atlantic Salmon of Maine, LLC*, 339 F.3d 23, 33 (1st Cir. 2003)(citing *Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co.*, 215 F.3d 195, 205 (1st Cir. 2000)(listing relevant factors)); *see B.H. v. Gold Fields Mining Corp.*, 506 F.Supp.2d 792, 803-04 (N.D. Okla. 2007)(relying on five factors identified in *Schwartzman, Inc. v. Atchinson, Topeka & Sante Fe Railway*, 857 F.Supp.2d 838, 841-43 (D.N.M. 1994)).

In the present case, Plaintiffs' state law claims for monetary damages for injuries to their persons or property are a type of claim not ordinarily referred to federal agencies since adjudicating this type of relief is within the ordinary province of the federal courts. *See Schwartzman, Inc*. 857 F.Supp. at 843. Defendants have not pointed to circumstances in the case that would warrant an Order staying Plaintiffs' state claims for monetary damages pending referral to the EPA, at least at this stage (early pre-class certification) of the case. *See id*.

Defendants contend otherwise arguing, "Plaintiffs' arguments are all based on erroneous factual contentions and are without merit." (Doc. #31 at 4). For the following reasons, neither the present procedural posture of this case nor the present record support a dismissal or stay of Plaintiffs' claims at this time under the doctrine of primary jurisdiction.

The EPA doubtlessly has expertise and experience in at least some of the technical factual issues in this case, including, for instance, whether or not (and to what extent) Defendants contaminated the environment in the manner Plaintiffs allege. *See Gold Fields Mining*, 506 F.Supp. at 803-04. Although this favors a stay of Plaintiffs' claims for injunctive relief, this does not automatically trigger a stay because the doctrine of primary jurisdiction is not governed by a "fixed formula." *Western Pacific Railroad Co*., 352 U.S. at 64. Although the Court assumes, as indicated in Defendants' reliance on certain EPA records, that the EPA has begun its investigation and certain remediation efforts, *see* Doc. #28 at Tabs 1 and 2, Defendants have provided little specific information about the EPA's investigation and remediation efforts. For example, neither Defendants nor the Amended Complaint provides insight into whether the EPA is at an early or a more advanced stage of its investigation, when the EPA intends to conclude its investigation, or the scope or scale of the EPA's investigation. Will, or when will, the EPA conclude testing of Plaintiffs' neighborhoods, properties, and homes? Will, or when will, the EPA determine whether Defendants' facilities or operations caused any

contamination the EPA finds?  Will the EPA determine whether any contamination it finds in Plaintiffs' homes or properties caused actual physical or other harm to Plaintiffs?

Although Defendants characterize the EPA's investigation and remediation work as "ongoing and active" (Doc. #28 at 11), it is presently unclear how this case will interfere with those administrative activities, especially given the present posture of this case, when Court Orders regarding class certification would not intrude upon the EPA's investigation and remediation activities.  None of the class-certification concerns are within the expertise of the EPA, *see* Fed. R. Civ. P. 23; *see also Ball v. Union Carbide Corp.*, 385 F.3d 713, 726 n.10 (6th Cir. 2004) (discussing Rule 23's requirements), and no class-certification Order will implicate the concern of uniformity or interfere with the EPA's investigation or remediation activities.  Rather, such matters are within the conventional competence and procedures of the federal courts, rather than the EPA.

Perhaps the strongest cases favoring Defendants' position – *Schwartzman, Inc.* and *Gold Fields Mining Corp.* – are distinguishable from the present case for at least two reasons.  First, neither case granted a complete stay of the federal litigation (as Defendants seek in the present case) pending action by the EPA; instead, both cases stayed only the requests for injunctive relief.  *Schwartzman, Inc.*, 857 F.Supp. at 851; *Gold Fields Mining Corp.*, 506 F.Supp.2d at 809.  Second, in both cases the plaintiffs' claims for injunctive relief were stayed at the summary-judgment stage of the litigation; consequently, much more specific information was known about the EPA's activities than is currently known in the present record of the instant case.  *Schwartzman*, 857 F.3d at 842-43; *Gold Fields Mining*, 506 F.Supp.2d at 803-04.

Accordingly, although the EPA undoubtedly has experience and expertise concerning some of the technical factual issues that undergird the claims raised in Plaintiffs' Amended Complaint, the doctrine of primary jurisdiction does not presently apply to stay this case.  Defendants' Motion to Dismiss or Stay under the doctrine of primary jurisdiction therefore lacks merit.  *Cf. Alpharma, Inc. v. Pennfield Oil Co.*, 411

F.3d 934, 938 (8th Cir. 2005)(The doctrine of primary jurisdiction "is to be 'invoked sparingly, as it often results in added expense and delay.'" (citation omitted)).

### C.     <u>Count III – Unjust Enrichment</u>

Defendants argue that Plaintiffs have failed to state a claim of unjust enrichment because they have not identified the benefits they (Plaintiffs) conferred on Defendants. Relying heavily on *Nuckols v. National Heat Exchange Cleaning Corp.*, 2000 WL 35596698 at *4 (N.D. Ohio 2000), Defendants assert that Plaintiffs' conclusory allegation that Defendants saved money is insufficient standing alone to state an unjust enrichment claim.

An unjust enrichment claim under Ohio law consists of three elements: (1) the plaintiff must confer a benefit upon the defendant; (2) the defendant knew about such benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment to the plaintiffs. *Brown-Graves Co. v. Overt*, 98 Ohio App.3d 517, 523 (1994)(citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984)) (other citations omitted); *see Nuckols*, 2000 WL 35596698 at *4.

Contrary to Defendants' contentions, Plaintiffs' Amended Complaint contains sufficient specific allegations, which if accepted as true, reveal that Plaintiffs conferred a benefit upon Defendants and that Defendants knew about that benefit. Plaintiffs specifically allege that Defendants used Plaintiffs' properties "for years as a de facto storage facility for hazardous wastes." (Doc. #3, ¶3). If so, given the migratory and ultra-hazardous nature the contamination plume, as Plaintiffs allege, Defendants knew they were receiving a benefit from Plaintiffs by using their properties to help eliminate and store the hazardous substances from the Facility. In addition, the Amended Complaint alleges that Defendants shifted the true costs of storing these hazardous substances onto Plaintiffs, consequently saving Defendants' money over the years and shifting the physical risks posed by the hazardous substances to Plaintiffs and their homes and properties. Such allegations are sufficient to provide Defendants with notice of the

10

basis for each element of Plaintiffs' unjust enrichment claim, as those elements are described in *Brown-Graves Co.*, 98 Ohio App.3d at 23 and *Nuckols,* 2000 WL 35596698 at *4. And, consequently, Plaintiffs' Amended Complaint states a plausible right to relief under the theory of unjust enrichment.

The present case is factually distinguished from *Nuckols* because the Complaint in *Nuckols* failed to contain any allegation that the defendants knew they were receiving a benefit from the plaintiffs. 2008 WL 35596698 at *5. In contrast, Plaintiffs' Amended Complaint alleges specific facts showing that Defendants, unilaterally and without Plaintiffs' consent, chose to use Plaintiffs' properties as repositories for their hazardous contaminants, thus saving millions of dollars Defendants should have spent in properly containing the substances emanating from the Facility. *See* Doc. #3 at ¶s 3-5, 24, 34, 75-80. Lastly, although Defendants correctly point out that Plaintiffs' rely on cases that did not involve Ohio law, Defendants have not pointed to a case decided by an Ohio court holding that the cause of action for unjust enrichment under Ohio law does encompass toxic tort claims.

Accordingly, Defendants' Motion to Dismiss Count III of the Amended Complaint lacks merit.

### D.    <u>Count VI – Negligence *Per Se*</u>

Defendants contend that Plaintiffs' claim for negligence *per se* must be dismissed because they have not alleged a legislative basis for this claim. Defendants emphasize that Plaintiffs cannot base their negligence *per se* claim on Ohio Revised Code, Chapters 6111 and 3704, and the Plaintiffs' reference to "all applicable state and federal regulations" does not support a negligence *per se* claim.

Under Ohio law, where "a legislative enactment imposes upon a person a specific duty for the protection of others, his failure to observe that duty constitutes negligence per se." *Hernandez v. Martin Chevrolet, Inc*. 72 Ohio St.3d 302, 303 (1995) (quoting *Taylor v. Webster*, 12 Ohio St.2d 53, 56 (1967)).

To the extent that Plaintiffs' base their negligence *per se* claim on Chapter 6111 of the Ohio Revised Code, it fails to state a claim upon which relief can be granted. This is so because "Courts in Ohio ... have recognized that there is no private right of action under Chapter 6111, 'but instead charges the state government with enforcing its provisions.'" *Ashtabula River Corp. Group II v. Conrail, Inc.*, 549 F.Supp.2d 981, 989 (N.D. Ohio 2008)(citations omitted).

Plaintiffs correctly contend, however, that Ohio Rev. Code §3734.101 provides a private cause of action. "Contrary to ... [the] argument that only the state can properly enforce the environmental laws of the State of Ohio, this court expressly find that a private citizen who has been damaged by or believes that others will be damaged by the failure to comply with this state's environmental law is ... entirely within his or its rights to seek enforcement and/or any remedy available under Ohio law. Indeed, R.C. 3734.101 expressly provides for such a private right of action." *State ex rel. Celebrezze v. Specialized Finishers, Inc.*, 62 Ohio Misc.2d 516, 530, 604 N.E.2d 842, 851 (C.P. 1991). Because Plaintiffs' claim for negligence *per se* stands on a private right of action existing under Ohio Rev. Code §3734.101, it is not subject to dismissal under Rule 12(b)(6).

Accordingly, Plaintiffs' Count VI raises a plausible right to relief under a negligence *per se* theory, it is not subject to Rule 12(b)(6) dismissal.

### E.       Count VIII – Battery

Defendants contend that Plaintiffs' cause of action in battery fails to state a claim for relief because they have not alleged facts supporting the conclusion that Defendants were substantially certain the contamination would cause injury. Defendants reason, "Noticeably absent from Plaintiffs' Complaint are any factual allegations as to when, why, or even how Behr or Chrysler [was] substantially certain that their acts would result in injury to Plaintiffs." (Doc. #28 at 16).

Under Ohio law a battery is "'an intentional, nonconsensual touching.'" *Hale v. Vance*, 267 F.Supp.2d 725, 736 (S.D. Ohio 2003) (Rice, D.J.)(quoting *Watkins v.*

*Cleveland Clinic Found.,* 130 Ohio App.3d 262, 719 N.E.2d 1052, 1064 (1998). "A battery occurs when a person acts intending to cause a harmful or offensive contact, and when a harmful contact results." *Woods v. Miamisburg City Schools*, 254 F.Supp.2d 868, 878 (S.D. Ohio 2003)(Rice, D.J.) (citing, in part, *Love v. City of Port Clinton*, 37 Ohio St.3d 98, 99, 524 N.E.2d 166 (1988)). "Although the element of intent to inflict injury may be inferred from conduct which is wantonly or grossly negligent conduct which is merely negligent will not alone suffice to sustain an action for assault and battery." *Blankenship v. Parke Care Centers, Inc.*, 913 F.Supp. 1045, 1052 (S.D. Ohio 1995)(Beckwith, D.J.)(citations omitted).

Contrary to Defendants' contentions, the Amended Complaint sets forth sufficient facts to raise a plausible, non-speculative claim of civil battery. Paragraph 1 of the Amended Complaint generally explains the Complaint "arises out of defendants' contamination of plaintiffs' properties ... with toxic, carcinogenic and otherwise ultra hazardous chemicals...." (Doc. #3 at ¶1). Paragraph 3 alleges in part that the public continues "to bear the true cost of Defendants' intentional and reckless acts." *Id*. at ¶2. Plaintiffs further allege, "Defendants have knowingly and intentionally chosen not to remove the toxic chemicals from the environment although defendants are aware that ... plaintiffs continue to be exposed." *Id*. at ¶34. In support of their battery claim, Plaintiffs state, "Defendants, by intentionally generating, discharging, transporting, or allowing the discharge of hazardous and toxic substances, and/or concealing knowledge of same, intentionally and willfully caused a direct, harmful and/or offensive contact with Plaintiffs...." *Id*. at ¶105. Such facts are sufficient to raise a battery claim that is both plausible on its face and sufficient to place Defendants on notice of the factual grounds – particularly alleging adequate facts to show that Defendants acted intentionally or substantially certain to cause harm to Plaintiffs – upon which the battery claim rests.

Accordingly, Defendants' Motion to Dismiss Count VIII of the Amended Complaint lacks merit.

**F.     Count IX – Intentional Fraudulent Concealment;**
     **Count X – Constructive Fraud (Negligent Fraudulent Concealment)**

Defendants contend that Plaintiffs' fraud-based claims must be dismissed for failure to state a claim upon which relief can be granted.  Defendants reason that Plaintiffs have not plead facts with particularity as –  mandated by Fed. R. Civ. P. 9(b) – in support of each element of fraudulent concealment,  including facts showing an underlying duty to speak.  Defendants further contend that Plaintiffs allegations are conclusory.  And, according to Defendants, Plaintiffs have failed to allege facts with particularity showing that either Defendant took a single action to "conceal" information.  Defendants reason, "Merely alleging that Chrysler and Behr concealed information, without alleging how it was concealed, is insufficient to state a claim as a matter of law."  (Doc. #28 at 18).

Rule 9(b) of the Federal Rules of Civil Procedure provides, "In allegations of fraud..., a party must state with particularity the circumstances constituting fraud.... Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  A fraud claim that fails to satisfy Rule 9(b)'s particularity requirement is subject to dismissal under Rule 12(b)(6).  *Rorig v. Thiemann*, 2007 WL 2071909 at *5 (S.D. Ohio 2007)(Dlott, D.J.) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n. 5 (4th Cir.1999); *Mich. ex rel. Kelley v. McDonald Dairy Co.*, 905 F.Supp. 447, 450 (W.D. Mich. 1995)).

> The Sixth Circuit reads Rule 9(b)'s requirement 'liberally, ... requiring a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'  *Advocacy Organization for Patients and Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 322 (6th Cir.1999) (citing *Coffey v. Foamex L.P.,* 2 F.3d 157, 161-62 (6th Cir.1993)).  'Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony.'  *Sanderson v. HCA The Healthcare Co.,* 447 F.3d 873, 876 (6th Cir. 2006) ... (quoting *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir.1988)).  'On the other

14

hand, a district court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions.' *Id.* (citing *Kottmyer v. Maas,* 436 F.3d 684, 688 (6th Cir. 2006)).

*Rorig*, 2007 WL 2071909 at * 5.

Defendants' contentions are built on two premises: (1) to show fraud under Ohio common law, Plaintiffs must plead specific facts revealing that Defendants had a duty to speak, *see Randleman v. Fidelity Nat'l. Title Ins. Co.*, 465 F.SUpp.2d 812, 822 (N.D. Ohio 2006); and (2) Plaintiffs must plead such facts with particularity to satisfy Rule 9(b).

Plaintiffs' Amended Complaint pleads particularized facts sufficient to provide Defendants with notice adequate to defend against their fraud-based claims. In the context of a *qui tam* case, the United States Court of Appeals has explained, "Although Rule 9(b)'s special pleading standard is undoubtedly more demanding than the liberal notice pleading standard which governs most cases, *see Erickson,* 127 S.Ct. at 2200, Rule 9(b)'s special requirements should not be read as a mere formalism, decoupled from the general rule that a pleading must only be so detailed as is necessary to provide a defendant with sufficient notice to defend against the pleading's claims." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008)(citations omitted).

Under Ohio law, the "elements essential to a claim of fraud include:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."

*Javitch v. First Montauk Financial Corp.*, 279 F.Supp.2d 931, 940 (N.D.Ohio,2003) (quoting *Gaines v. Preterm-Cleveland*, 33 Ohio St.3d 54, 55 (1987))(other citation omitted). "An allegation of fraud 'is maintainable not only as a result of affirmative misrepresentations, but also for negative ones, such as the failure of a party ... to fully

disclose facts of a material nature where there exists a duty to speak.'" *Javitch*, 279
F.Supp.2d at 940 (quoting *Textron Financial Corp. v. Nationwide Mutual Ins. Co.,* 115
Ohio App.3d 137, 153 (1996)).

In the present case, Plaintiffs have done more than raise conclusory allegations
concerning Defendants' duty to speak; they have alleged that Defendants intentionally
concealed known facts about their release of hazardous substances from the Facility into
Plaintiffs' neighborhoods, properties, and/or homes.  Given such allegations of
intentionally fraudulent misconduct, the "duty to speak" element of fraud under Ohio law
is not dispositive.  *Cf. Mill's Pride, L.P. v. Miller Salvage, Inc*., 2008 WL 1848196 at *5
(S.D. Ohio 2008)(Smith, D.J.) ("Although it is unclear what was stated at the time of the
initial contracting, Defendants allege Mill's Pride did not disclose its understanding that
its sawdust contained and/or released formaldehyde, methyl ethyl ketone, ammonia, and
other hazardous substances and outdoor storage of the sawdust would cause the
generation or release of hazardous substances, pollutants, and/or contaminants into the
environment.").  In addition, Plaintiffs allege that Defendants have made "material
misrepresentations regarding the character of their operations, their remediation efforts,
and the risks posed to human health.  By their acts, the defendants allowed pollution to
worsen as the fraud continued at the expense of the health and wellbeing of the
unknowing public."  (Doc. #3 at¶2).  Because these and other allegations give rise to the
reasonable inference that Defendants have engaged in an intentional effort to falsely
inform Plaintiffs of the lack of danger or health risks posed by the contamination,
Defendants' alleged misrepresentations created a duty to speak in order "'to dispel
misleading impressions that are or might have been created by partial revelations of the
facts.'" *Divine Tower Intern. Corp. v. Kegler, Brown, Hill & Ritter Co., L.P.A.*, 2007 WL
2572258 at *15 (S.D. Ohio 2007)(Graham, D.J.)(citing in part *Blon v. Bank One, Akron,
N.A.*, 35 Ohio St.3d 98, 101 (1988)).  "A representation which will serve as the basis for
an action in common-law fraud is not confined to spoken or written words but may

encompass conduct that amounts to an assertion not in accordance with the truth." *Russ v. TRW, Inc*., 59 Ohio St.3d 42, 49 (1991).

In addition, Plaintiffs correctly contend that "Defendants had superior knowledge of this contamination which was otherwise invisible to the public, including plaintiffs." (Doc. #30 at 26). Plaintiffs' fraudulent concealment claim also provides sufficiently particularized facts to give Defendants notice that the claim is based on Defendants' operation of the Facility as well as their deficient cleanup efforts. *See* Doc. #3 at ¶s 2-9, 27-34, 39, 109-112, 120-124.

Accordingly, Defendants' Motion to Dismiss Counts IX and X of the Amended Complaint lacks merit.

### G.     Count XI – Negligent Misrepresentation

Defendants argue that Plaintiffs' claim for negligent misrepresentation merely repeats and rephrases their fraud-based claims, and Plaintiffs never once identify a single misrepresentation communicated to the and attributable to either Defendant. Plaintiffs further assert, "A claim for negligent misrepresentation cannot be based on an omission, but rather must allege some affirmative false statement." (Doc. #28 at 18)(citing *Textron Financial Corporation v. Nationwide Mutual Ins. Co*., 115 Ohio App.3d 137, 149, 684 N.E.2d 1261, 1269 (1996)).

Contrary to Defendants' contentions, the Amended Complaint and claim of negligent misrepresentation sufficiently alleges more than omissions, passive behavior, or inaction by Defendants. Plaintiffs allege that Defendants have misled the public by negligently concealing and failing "to disclose to plaintiffs' the nature, extent, magnitude, and effects of the exposure of plaintiffs ... to the toxic and hazardous materials emitted, release, stored, handled, processed, transported, and/or disposed of in and around the Facility and the surrounding environment." (Doc. #3 at ¶129). The Complaint pleads sufficiently specific facts in support of this claim to raise a plausible right to relief in negligent misrepresentation. It is worth pausing briefly to note, however, that Plaintiffs

will not likely be able to recover under both their fraud-based claims as well and their negligent misrepresentation claims. *See Textron Fin. Corp.*, 115 Ohio App.3d at 149 ("While a plaintiff may allege, in the alternative, both fraud and negligent misrepresentation as to the same course of conduct, a defendant cannot be found to have committed an act both intentionally and negligently.").

Accordingly, Defendants' Motion to Dismiss Count XI of the Amended Complaint lacks merit.

### H.    Count XII – Civil Conspiracy

Defendants argue that Plaintiffs' civil conspiracy claim must be dismissed because "Plaintiffs simply allege, 'Defendants reached an agreement'..., but do not allege a single fact even suggesting the nature, terms, during, purpose, or parties to the 'agreement.'" (Doc. #28 at 19).

"Under Ohio law, a civil conspiracy is 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Chesher v. Neyer*, 477 F.3d 784, 805 (6th Cir. 2007) (quoting *Williams v. Aetna Fin. Co*., 83 Ohio St.3d 464, 700 N.E.2d 859, 868 (1998)).

Plaintiffs' civil conspiracy claim rests on sufficiently specific facts to show that Defendants maliciously combined their activities, misconduct, and omissions to release and/or conceal the release of ultra-hazardous contaminants from the Facility into Plaintiffs' neighborhoods, properties, and homes. Construing the Amended Complaint in Plaintiffs' favor, they also allege sufficient facts to show that if either Defendant had not cooperated in those activities, misconduct, and omissions, the other Defendant would not have been able to conceal the release of the ultra-hazardous contaminants.  As a result, Plaintiffs' have raised a plausible claim that "Defendants reached an agreement to act in concert to mask the true extent of contamination, thereby enabling the defendants to avoid taking all appropriate steps to remediate the facility and the surrounding environment or to mitigate dangers created by their release...."  (Doc. #3 at ¶139).

Accordingly, Defendants' Motion to Dismiss Count XII of the Amended Complaint lacks merit.

## I. Defendants' Motion to Dismiss Counts VII and XIII

Defendants contend that Plaintiffs' Count VII (Medical Monitoring) must be dismissed under Rule 12(b)(6) because Ohio law does not recognize an independent cause of action for "medical monitoring." Defendants further contend that Plaintiffs' Count XIII (Punitive/Exemplary Damages) must be dismissed because Ohio law does not provide an independent cause of action for punitive damages. Plaintiffs acknowledge the merit in Defendants' contentions (Doc. #30 at 17), and they reserve the right to seek medical monitoring and punitive/exemplary damages.

Dismissal of Plaintiffs' Count VII (Medical Monitoring) is warranted. *See Day v. NLO*, 851 F.Supp. 869, 879-80 (S.D. Ohio 1994) (Spiegel, D.J.) ("Recognition that a defendant's conduct has created the need for future medical monitoring does not create a new tort."). And dismissal of Count XIII (Punitive/Exemplary Damages) is warranted. *See Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 650, 635 N.E.2d 331, 342 (1994) ("In Ohio, no civil action may be maintained simply for punitive damages). Care should be taken, however, not to bar Plaintiffs from seeking medical monitoring or punitive/exemplary damages as potential remedies in this case.

Accordingly, Defendants' Motion to Dismiss is well taken as to Counts VII and XIII of the Amended Complaint, and those Counts should be dismissed without prejudice to Plaintiffs' ability to seek punitive/exemplary damages and medical monitoring as remedies in this case.

**IT IS THEREFORE RECOMMENDED THAT:**

1.      Defendants' Motions to Dismiss or in the Alternative to Stay (Doc. #28) be GRANTED in part, and Plaintiffs' Counts VII and XIII of the Amended Complaint be dismissed without prejudice to Plaintiffs' ability to seek medical monitoring and punitive/exemplary damages as remedies; and

2.      Defendants' Motions to Dismiss or in the Alternative to Stay (Doc. #28) be otherwise DENIED.

April 22, 2009                                      __s/ Sharon L. Ovington__

                                                         Sharon L. Ovington
                                          United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).